UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                     Case No. 2:10-cr-20454
                                                        Hon. Marianne O. Battani

YU QIN, D-1
      and
SHANSHAN DU, D-2
_____/

**DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN EVIDENCE**

The government's motion in limine is addressed primarily to what they perceive as either a lack of disclosure of items from defense, or plans of the defense to introduce items at trial that are not admissible. The motion addresses "irrelevant evidence," inadmissible hearsay, and the lack of discovery of expert opinions or exhibits.

The court has seen this motion before. The government sought to ban "irrelevant evidence" before the last trial date, and the court denied the government's motion. The government sought more expert disclosures, the court ordered more disclosure, and the defense has provided multiple expert disclosures since the court's order. Copies of the letters and the documents sent to the government will be provided on request.

The motion is ill-advised, premature, and in some instances suffers from problems created by the government's own failure to make disclosures themselves until the last minute. The motion also fails to comply with the local rule that requires that a moving party seek

concurrence in a motion before the motion is filed.  In other words, the defense had no intent to introduce some evidence which the government chooses to make the subject of their motion.

It should be remembered from the outset that where the government seeks to exclude defense evidence, the court must consider that the defense has a constitutional right to present a defense, and that right cannot be limited by any procedural rules or statutes.  The exclusion of evidence that is favorable to the defense violates the defendant's right to compulsory process under the Sixth Amendment of the United States Constitution, which includes the right to present a defense.  *See, Washington v. Texas,* 388 U.S. 14 (1967).  The Sixth Circuit has held that denying the defendant his right to present an expert that is key to his defense (and also denying the testimony of an eyewitness) is a denial of the right to present a defense under the Sixth Amendment.  *Ferensic v. Birkett,* 502 F.3d 469 (6th Cir. 2007).  The right to present a defense cannot be restricted by unreasonable rules of the courts.  *Rock v. Arkansas,* 483 U.S. 44 (1987); *Holmes v. South Carolina,* 550 U.S. 398 (2006).  In *Holmes v. South Carolina,* the United States Supreme Court held that a procedural rule in South Carolina that prevented a defendant from introducing evidence of third-party guilt violated the right to present a defense under the Sixth Amendment.

As to government claims of lack of disclosure of items from the defense, it is important to view the government's motion in the historical context of the case and the lack of discovery and disclosure of the government's case.  As this response is being filed, the defense has yet to receive a witness list from the government – at the present time, the witnesses that the government will call at the trial are *unknown* to the defense.[1]  This failure to disclose witnesses has been exacerbated by a letter from government counsel on October 5, 2012, informing

---

[1] Although the court has entered a standing order in this case that provides witnesses be disclosed at the final pretrial conference, government counsel has advised that a consultation with chambers has resulted in the government being relieved of this obligation, and the government witnesses will be disclosed *the day before this trial commences*.

defense counsel that the government "may or may not" call any or all of the expert witnesses it has disclosed, leaving the defense to guess which experts will be called at trial.

Similarly, the defense only has an exhibit list from the government, received today, October 15, 2012, and does not have any exhibits from the government; government counsel has disclosed that the government exhibits will be provided on the day of the final pretrial conference.

Thus the defense is left with the unenviable task of filtering through the discovery and the witness statements and trying to guess what items in the discovery will be exhibits,[2] and trying to guess who among the witnesses identified in discovery will be called at trial. Since the defense case is essentially a rebuttal case – rebutting the prosecution's experts and witnesses – the task of the defense identifying witnesses and exhibits to respond to the government's unknown witnesses and exhibits is essentially impossible.

The response to the government experts by defense experts is made difficult by the fact that the government has disclosed within the last ten days that the government "may or may not" call its own experts.[3] And, it is made even more difficult by the fact that the government, in no less than five letters, has continually amended what the experts will testify to. Although the court set a deadline for expert disclosure of December 11, 2011, government counsel has virtually ignored the deadline and continued to supplement expert opinions, add new experts, and otherwise change and modify what the experts would testify to, right up to October 5, 2012.[4]

---

[2] Although the defense now has the government exhibit list, even the list of the government does not clearly describe some of the exhibits so they can be identified from the list. Example: "CVS receipt."

[3] The government also stated in its letter of October 5, 2012, that (1) it will not identify what experts it will or will not call and (2) will not make available for the defense any experts it has disclosed but will not call. This leaves the defense the only option of subpoenaing every single government expert witness.

[4] The extent of this continual amendment of opinions of government experts can be identified by one example. The government, in its most recent letter of October 5, 2012, has indicated for the first time that one of its experts, Dr. Jahns, is going to offer testimony about an item named in the indictment, proposed testimony that was totally

The task facing the defense – of identifying exactly what experts will testify to and identifying what exhibits be utilized by the government – is made even more difficult by the fact that the government expert opinions has become a moving target.

Nonetheless, the defense has responded to every request from the government concerning its experts, supplementing at least four times expert opinions and providing to the government notebooks of documents that will be relied on by the defense experts.

Another difficulty for the defense in making decisions about what witnesses will be called and what exhibits will be utilized at trial is the fact that the government has withheld discovery information, redacted witness information, and failed to disclose Jencks material by its own timetable.  Despite its declaration in December of 2011 that all Jencks material has been disclosed, the government has as recently as September 24, 2012, and October 5, 2012, disclosed additional witness information in FBI 302s.[5]  The government continues to dribble out discovery that it "inadvertently failed to disclose"[6] during the delay caused by their interlocutory appeal.  And, as the court may remember, the defense objected to redactions in Jencks material, particularly redactions in an FBI 302 of an interview of Sean Gleason, and the defense filed a motion for disclosure of his full witness statement.  Concerns about government failure to meet its obligations under *Brady* – to disclose exculpatory information in its possession – have been woven throughout all of the defense motions seeking full disclosure from the government.

The court accepted the government's word that they had no obligation to disclose the information from Gleason in the first place, since it was in an FBI 302, and there was no

---

omitted from his first report.  He now opines, for the first time, that the item named in the indictment was generally known to engineers.

[5] The government keeps asking for "defense Jencks" material.  There is no such thing as "defense Jencks" material.  The Jencks Act, 18 U.S.C. § 3500, provides the methodology by which statements *in the possession of the government* should be disclosed to the defense.  Although not required to do so, the defense has disclosed investigator reports of the interviews of at least two government witnesses, Hubbard and Gataric.

[6] This is a quote from several government letters to defense.

evidence that it had been adopted by the witness.  However, recently the government disclosed the unredacted portions of the statements of Gleason, and not surprisingly the extensive redactions included *Brady* material.[7]  An FBI 302 of the interview of Rao Zhou, which was conducted in *2006* was only recently turned over to the defense – and that statement also had *Brady* information.  The defense has been demanding statements from Mr. Zhou, and demanding a copy of the computer taken from him.

So, now the defense is faced with the task of building a defense with new, exculpatory information, disclosed within the last month before trial, and making decisions as to witnesses and exhibits shaped by the new information even more difficult.

    A.   The Defense does not object to the exclusion of Defendant Du's Cancer Treatment and Mental Health Issues Caused by these Charges

If the government would have sought concurrence of opposing counsel as required by LR 7.1(a)(1), some of the issues raised by the government in this motion could have been avoided and the court would not have been burdened with this lengthy motion in limine.  If that rule had been complied with, the government would have discovered that the defense had no intention to introduce evidence of the treatment of defendant Du for cancer.  Defense counsel has no intent to introduce the fact that Du did have cancer.  Defendant Du did suffer a breakdown at the time of her arrest, but she has sought treatment and the defense had no intention of introducing her mental health treatment following her arrest in 2010.  There is, however, a piece of documentary evidence, which is currently in possession of the government, on one of the computers seized by the government, where Du indicated she suffered from migraines and that she did not want to

---

[7] The government had redacted information received from Gleason, including that (1) several items named in the indictment were not secret; (2) GM did not enforce its "clean desk" policy; (3) employees of GM were allowed to keep working copies of GM documents on their local computers or thumb drives; (4) GM did not follow its own marking policy in marking documents used by Du in her work; and (5) contrary to the allegations in the indictment, several items of  software possessed by Du were necessary for her work.  These statements are all material as to whether the items named in the indictment as "trade secrets" were trade secrets, as the law requires the items to be identified and protected as secret.  See 18 U.S.C. § 1839(3)(A).

move to the hybrid car group.[8]  Her citing her migraines and objecting to a move to the hybrid

car group is relevant to rebut the government assertion that Du sought the assignment to the

hybrid car group to steal GM information on hybrid cars.

      B.  <u>Current Public Domain Information</u> is Relevant as the Basis for Expert
               Opinions, as it is merely a current version of what has been on the Internet for
               a Long time; the government's delay in bringing this indictment has made it
               difficult or impossible to find the information on the Internet that was
               available at the time of the alleged offense.

Due to the government's procrastination until the eve of the statute of limitations, which

caused them to delay this indictment for five years, defense counsel can only obtain the *current*

public domain information.[9]  Information is constantly replaced on the Internet.  The issue is

whether this type of information has been available; thus, if it is currently on the Internet, is it a

current version of information that was generally known in 2005.  Experts can opine whether the

current information is simply a more recent version of what has *always* been available in the

public domain.  This information is simply the basis for expert opinion, not items that are

admissible, per se.  This goes to the weight of expert testimony, not the admissibility of the

testimony.

      C.  <u>The Limited Expert Testimony of Slobodan Gataric is Admissible</u>

The government claims that there is no basis for Mr. Gataric's opinion, as a former GM

engineer, that two items that government sought to label as trade secrets, were "common

knowledge."  What Gataric said to the FBI is that two documents from GM were "common

---

[8] This letter from Du complaining of migraines and asking not to be transferred is another piece of evidence that is *Brady* material that should have been turned over to the defense immediately.  Instead, this document was never turned over to the defense, but was located by the defense after repeated demands for copies of *all* of the computers the government seized by the government.

[9] The government's lengthy delay caused defense to seek to dismiss the indictment, saying that there was prejudice to the defense.  The court denied that motion.  The fact that the Internet information from 2005 is no longer available is not the fault of the defense, but the government due to its delay.  Here is another example of prejudice suffered by the defense.

knowledge in the industry." This statement cannot be a surprise to the government, as the statement was made to an FBI agent.[10]

Common knowledge has a plain meaning: it is defined on Wikipedia as "knowledge that is known by everyone or nearly everyone, usually with reference to the community in which the term is used." http://en.wikipedia.org/wiki/Common_knowledge (accessed Oct. 9, 2012). If it is "common knowledge," it is the opposite of the legal definition of a trade secret, which is information not generally known to the public. 18 U.S.C. § 1839(3)(B) An expert does not have to base his or her opinion on a treatise or a book, but on his or her experience in their area of expertise. Gataric, as a person who was an electrical engineer for GM, has the necessary experience to give an opinion that GM documents embodied "common knowledge." The expert can be cross-examined on this conclusion. Gataric, as a GM insider, is in a particularly well-placed position to give this opinion as to GM documents. His opinion may also embody an institutional opinion of GM and explain why none of these documents were protected as trade secrets. Therefore, the opinion is exculpatory evidence, since documents not protected as trade secrets are not, as a matter of law, trade secrets. Additionally, his opinion can be used to cross examine other experts or GM employees. It is also important to note that Gataric gave his opinion to the FBI.

As to the limitation of Gataric's testimony to two documents, the defense sent the government a letter on December 30, 2012 referencing a GM investigative report provided to us by the government, indicating that two documents were faxed to Mr. Gataric so that he can comment on them. He told investigators that "[t]he drawings are common knowledge in the industry and were furnished to Sean Gleason and his team." In that letter, the defense indicated

---

[10] The government's own engineering expert, Dr. Thomas Jahns, also agrees with Gataric, noting that this item was published by GM in 2006, and that the item has "relatively limited" proprietary value.

that Mr. Gataric's expert testimony will be limited to the two documents that he furnished to Gleason's team and his opinion that they are common knowledge in the industry.

The government claims that the two items that Gataric viewed as "common knowledge in the industry" are not named in the indictment.  Actually, one is named in the indictment – dead time calculation – but Gataric's opinion, offered early in the investigation, is relevant, as someone from GM was warning the government that the GM documents were not trade secrets.

### D.   The Defense has no intent to introduce FBI 302s

Again, had government counsel sought concurrence in its motion as they were required to do under L.R. 7.1, they would have discovered that the defense counsel do not plan on introducing 302's as evidence; however, the defense is entitled, and does plan, to cross examine on the statements in the 302's.

### E.   The government's objection to use of GM Investigative Memos and the Search Warrant Affidavits at trial is premature.

The government claims that statements of GM employees and a forensic computer report by a "forensic examiner" are inadmissible hearsay; this is a premature motion.  The government counsel have refused to provide GM investigative documents, objected to a 17(c) subpoena for these documents, and do not identify what documents they reference, do not identify what computer was examined, or who did the forensic report.   As to the government's claim that a search warrant affidavit is inadmissible hearsay and does not fall under any exception, this is also a premature motion, and a motion that could have been avoided by compliance with L.R. 7.1, seeking concurrence.  The defense has no intention to introduce the affidavit, unless someone denies a fact in the affidavit at trial.  Then, the affidavit could be used to cross examine witnesses and impeach witnesses.

    F.  <u>The Testimony of Dr. King and other government experts, and the basis for</u>
<u>their opinions has been adequately disclosed within the meaning of Rule 16.</u>

The defense has supplied the government with two long letters outlining the testimony of its experts, and answered several other letters from the government concerning those opinions and the bases for those opinions.  The defense has also disclosed lengthy notebooks containing information that will be the basis of Dr. King's opinion, and provided a CD with Excel spreadsheets that are the basis of the defense computer expert, Larry Dalman.

Because of the recent amendments of the government expert opinions received on September 24th and October 5th, and copies of expert reports received at that time, and pending receipt of the government's exhibits and witness lists, the defense is currently reviewing all expert opinions and will update before trial if necessary.  (See discussion above)  The defense will endeavor to comply with the court's pretrial order requiring disclosure of proposed exhibits by the final pre-trial conference on October 16, 2012.  However, at this stage, without the government exhibits and witness list, the defense cannot say with certainty what it will use at trial.  Rule 16 requires disclosure of "documents in the possession of the defense" that the defense intends to introduce at trial; the defense has provided reams of documents to the government, and as items are identified for use at trial, will continue to do so.  As the defense creates exhibits to use at trial, they will be provided to the government.  Creation of defense exhibits has been made difficult by the last minute expert disclosures of the prosecution and by the shifting sands of the government opinions.

In no way should the defense experts be excluded based on exhibits disclosed, and the timing of disclosing exhibits.  Sixth Circuit opinions regarding compliance with Rule 16 disclose that the Sixth Circuit has held that an expert should be permitted to testify regardless of any

alleged deficiency of notice, and that a notice does not have to completely cover all opinions of an expert to allow an expert to testify. Rule 16 provides that the party making an expert disclosure only has to provide a "summary" of the testimony of the expert.

That summary can be very general, and does not have to include everything the witness is going to testify about. In *United States v. Ham*, 628 F.3d 801, 806 (6th Cir. 2011), the Sixth Circuit held that where the government provided notice that a narcotics investigator would provide testimony "concerning the general practices of drug dealers" the notice was sufficient to allow the expert to testify about plastic baggies and scales, even though that particular opinion was not included in the notice. Likewise in *United States v. Glover*, 846 F.2d 339, 341-342 (6th Cir. 1988), the Sixth Circuit held that it was not error for a government handwriting expert to testify to opinions on handwriting where the government failed to disclose the samples on which the opinions were based. Exclusion of the witness would have been too severe a sanction for failure to disclose the basis of the opinion. Also, in *United States v. White*, 492 F.3d 380, 399, 406 (6th Cir. 2007), the court found that the government's notice, consisting of one sentence detailing the qualifications of the experts with information on their employer, was deficient under Rule 16. However, the court found it was not error to permit the expert to testify, as there was no surprise to the defense. *Id.,* p. 406

In *United States v. Ganier*, 468 F.3d 920, 922 (6th Cir. 2006), the government provided no notice under Rule 16 concerning their computer expert's testimony. On the day trial began, the defense moved to exclude the testimony of the expert because of no notice under Rule 16. *Id.* p. 922-923. The district court granted the motion. *Id.* p. 923. The government sought an interlocutory appeal. The Sixth Circuit found that notice should have been given, but reversed the district court's order of exclusion of the expert. *Id.* The court noted that exclusion of an

expert because of a deficiency of notice under Rule 16 (or in the *Ganier* case, because of a total lack of notice) is too severe a sanction, and the court should consider (1) the reasons for any delay (2) the degree of prejudice to the opposing party (3) and whether prejudice can be cured with a less severe course of action.  *Id.* p. 927.  Important to the court's finding of no prejudice to the defense was the fact that the defense "had an expert prepared to testify" itself and "was well aware that the issue [of computer expert opinions] could be raised at trial . . . ."  *Id.* p. 928.

Here, the defense experts are responsive to the government experts.  The government experts have had an opportunity *before the defense experts* to review the evidence and information in this case.  The government experts keep changing their opinions, and the government has now indicated that it "may not" call all of its experts.  The defense experts, and areas of expertise, can hardly be deemed a surprise to the government.  The defense has fully complied with Rule 16.

The defense notice *before supplementation by the defense* was sufficient under Rule 16, and under Sixth Circuit precedent, was not such as to require exclusion of experts.

The government appears concerned here, because they know the search warrant affidavit is replete with false statements, and concerned because, like other items withheld by the government, it is likely the GM investigative reports and forensic examination contain exculpatory information.

The only item concerning the search warrants that the defense has put the government on notice as using at trial is a *return* from a search warrant.

RELIEF REQUESTED

The defense requests that the court deny the government's motion *in limine*.

/s/Frank D. Eaman                              /s/Robert M. Morgan(w/permission)
Frank D. Eaman (P 13070)                       Robert M. Morgan (P 23144)
Attorney for Defendant Yu Qin                  Attorney for Defendant Shanshan Du
Frank D. Eaman PLLC                            525 Griswold St., Suite 1125
645 Griswold St., Suite 3060                   Detroit, MI 48226
Detroit, MI 48226                              313-961-7070
313-962-7210                                   morgancrdefense@ameritech.net
eaman@eamanlaw.com

Dated: October 15, 2012


CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Cathleen Corken
Assistant United States Attorney
Attorney for the United States

Michael Martin
Assistant United States Attorney
Attorney for the United States

Robert M. Morgan
Attorney for Defendant Shanshan Du


/s/ Frank D. Eaman                              Dated: October 15, 2012
Frank D. Eaman (P 13070)
Frank D. Eaman, PLLC
Suite 3060
645 Griswold St.
Detroit, MI 48226
(313) 962-7210
eaman@eamanlaw.com